UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-80952-CIV-COHN/SELTZER

SECURITIES AND EXCHANGE COMMISSION,

   Plaintiff,

v.

PRIME TIME GROUP, INC., n/k/a
HUNT GOLD CORPORATION, JOHNNY RAY
ARNOLD, DALLAS L. ROBINSON,
TROY K. METZ, and JOHN A. MATTERA,

   Defendants.
_____/

## ORDER DENYING MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Dallas Robinson's Motion to Dismiss [DE 10/11] and Defendant Troy Metz's Motion to Dismiss [DE 35]. The Court has carefully considered the motions, responses and replies thereto, and is otherwise fully advised in the premises.

### I.  BACKGROUND

The Securities and Exchange Commission ("SEC" or "Plaintiff") filed this action for fraud and the sale of unregistered securities against Prime Time Group, Inc. ("Prime Time") and four individual officers or large shareholders of Defendant Prime Time, an American corporation based in Fort Lauderdale, Florida. The two-count Complaint alleges violations of federal securities laws, in particular Section 10(b) and Rule 10b-5 of the Securities and Exchange Act (Count I), and Sections 5(a) and 5(c) of the Securities Act (Count II). Two of the individual defendants, Dallas Robinson ("Robinson") and Troy Metz ("Metz") (collectively "Defendants") moved to dismiss this action for lack of

personal jurisdiction and for failure to plead fraud with particularity.[1]  Both Robinson and Metz are Canadian citizens who reside in Canada and assert that their limited personal contact with Florida is insufficient under a due process analysis for personal jurisdiction.

Defendant Robinson was the Chief Executive Officer of Prime Time from September of 2006 through March of 2007 and its Chairman from November 2006 until January of 2007, after Prime Time acquired Robinson Wireless, Inc., a Canadian-based company.  Affidavit of Dallas Robinson ¶ 1 [DE 11-2]; Complaint ¶ 27.  His duties included running the day-to-day operations of the company and during his five months of employment he visited South Florida six times for business related matters.  Robinson Affidavit ¶¶ 4-5.  In his individual capacity, he did not maintain an office or mailing address in South Florida, did not pay taxes, own property, solicit or own a business, or have any other contacts.  Id. ¶¶ 6-11.

Defendant Metz was Chief Operating Officer of Prime Time from November of 2006 until April of 2007.  Affidavit of Troy Metz ¶ 1 [DE 35-1]; Complaint ¶ 10.  His "duties did not include dissemination of press releases[;]" rather, such dissemination was done by personnel located in South Florida.  Metz Affidavit at ¶ 3.  Metz denies having any contacts with South Florida and was not compensated by Prime Time.  Id. ¶¶ 4-5.

The Complaint, however, alleges that Defendants issued a series of false statements in the form of misleading press releases regarding the acquisitions and operations of Defendant Prime Time Group, Inc. in a scheme to bolster its stock price

---

[1] Robinson and Metz are named as defendants only in Count I.

and defraud investors.  Furthermore, in response to the motion, the SEC includes press releases in which Robinson was quoted (described below) and corporate filing information that listed Robinson as the sole manager of XPress Your Cell U.S.A with an Arizona address.  Exhibit F to SEC's Response [DE 25-6].  The press releases at issue also quote Metz (see below) and, in at least four of them, list him as a contact person with a Florida telephone number.  In addition, the SEC includes copies of email communications in which Metz is clearly drafting press releases for Prime Time in October and November of 2006.  See Exhibits B, C, and D to SEC's Response [DE 41-2 to 41-4].

Although the SEC alleges that Robinson and Metz misrepresented several facts in violation of Section 10(b) and Rule 10(b)-5, some of the relevant time periods were clearly after they left their executive positions.  Thus, Defendants could not have been involved in those parts of the fraud.[2]  Notwithstanding, the following allegations support the claim against Defendants for false statements and/or misleading omissions or acts which operated as a fraud upon purchasers of Prime Time stock:

--	Between December 2006 and November 2007, Robinson and Metz, among others, issued numerous press releases discussing Prime Time's interest in PR-7, even though Prime Time had lost 92% of its ownership in PR-7 in May of 2006. Complaint ¶ 26.

–	December 19, 2006 – Company press release issued "through Robinson and Metz," quoting both of them and announcing that Prime Time's wireless division generated sales growth averaging 15% per week in November 2006 without disclosing that internal financial records showed that expenses doubled and the

---

[2] Some of these allegations relate to the time period before or after Robinson and Metz took over as CEO and COO, respectively, of Prime Time.  Complaint ¶¶ 15-25, 40.

     division had a net monthly loss of nearly $56,000.  Complaint ¶ 33; Exhibit A to SEC's Response [DE 25-1].

–     January 23, 2007 – Company press release quoting both Robinson and Metz and stating that Prime Time's wireless division had generated more than $900,000 in revenue in its first six months of operation, but failing to disclose that the division had a net loss of $500,000 in same period.  Complaint ¶ 34; Exhibit B to SEC's Response [DE 25-2].

–     December 18, 2006 –  Company press release issued "through Robinson and Metz," quoting both of them and announcing Prime Time had completed a licensing agreement with a manufacturer of cell phones allowing Prime Time to distribute the accessories, but in fact only negotiations had occurred, with no agreement ever being reached.  Complaint ¶ 37; Exhibit C to SEC's Response [DE 25-3].

–     January 16, 2007 – Company press release issued "through Robinson and Metz," quoting both of them and announcing Prime Time had acquired Xpress Your Cell USA, when in fact the only agreement reached was to continue to negotiate.  No final agreement was executed.  Complaint ¶¶ 38-39; Exhibit D to SEC's Response [DE 25-4].

Defendants Robinson and Metz have separately moved to dismiss the Complaint for lack of personal jurisdiction and for failure to plead fraud with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiff SEC opposes the motions.

## II.  DISCUSSION

### A.  Personal Jurisdiction – Federal Statute with Nationwide Service of Process

The determination of personal jurisdiction over a nonresident defendant typically requires a two-part analysis involving a state long-arm statute and a due process analysis.  However, when a federal statute such as the Securities and Exchange Act, 15 U.S.C. §§ 77u(a) and 78aa, provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction.  <u>Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 942 (11th Cir. 1997).   This allowance for nationwide

service of process provides a distinction from the usual analysis under Rule 4(e) of the Federal Rules of Civil Procedure which requires that jurisdiction and service of process be determined by the state long-arm statute.  <u>Cable/Home Comm. Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990); <u>Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d 1355, 1358 (Fed. Cir. 1998).  The Court therefore need not address whether Florida's long arm statute applies to Defendants Robinson and Metz. <u>SEC v. Carrillo</u>, 115 F.3d 1540, 1543 (11th Cir. 1997).  Rather, the Court must determine whether there are sufficient minimum contacts with the United States as a whole to satisfy the Due Process Clause of the Fifth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  <u>Carrillo</u>, 115 F.3d at 1543-44; <u>see also</u> <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

### 1.  Minimum Contacts

Minimum contacts involve three criteria:  First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum must be such that it should reasonably anticipate being haled into court there.  <u>Carrillo</u>, 115 F.3d at 1544-47; <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 631 (11th Cir. 1996); <u>Vermeulen v. Renault, U.S.A., Inc.</u>, 985 F.2d 1534, 1546 (11th Cir. 1993).

The SEC argues that Defendant Robinson's six visits to South Florida for business related matters, combined with his position as CEO in charge of day-to-day

operations of Prime Time, provide sufficient contacts with the United States that are related to the securities fraud claim.  The SEC further argues that those contacts constitute purposeful availment of conducting business activities in the United States. There is no dispute that Prime Time itself is a corporation incorporated under the laws of the United States and had publicly traded shares with numerous American shareholders.  The press releases in question quote Robinson (and Metz).  The Court therefore concludes that Robinson's contacts with the United States are related to the cause of action against him and that Robinson has purposefully availed himself of conducting business activities in the United States.

Likewise, Defendant Robinson could have reasonably anticipated being haled into court in the United States.  Despite his physical presence in Canada, Robinson was the CEO of an American company and ran its day-to-day operations.  Furthermore, XPress Your Cell, an Arizona-based entity, listed Robinson as its sole Manager and provided an Arizona contact address for him.  These alleged facts, combined with the allegations that he participated in the issuance of misleading press releases by the Florida-based company that he ran, are sufficient to show that Robinson should reasonably anticipate being haled into court in the United States.

Turning next to Defendant Metz, though his contacts are less than Robinson's, the SEC has sufficiently alleged, with supporting emails, that Metz "participated in drafting and reviewing Prime Time's press releases concerning the company's wireless division." Complaint ¶ 10.  Although Metz denied this activity in his affidavit, when the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of

6

personal jurisdiction over a nonresident defendant.  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996).  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  Id.  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  However, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.  Id. (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).  In this case, the SEC bolsters its Complaint with email evidence that Metz personally participated in preparation of the press releases.  Additionally, the press releases which quote Metz were issued in Florida.  Moreover, as noted above, Metz is listed in the press releases as a contact person with a Florida telephone number.

  The Court therefore concludes that Metz's activities with Prime Time – i.e., drafting and helping to disseminate allegedly misleading press releases – are sufficient contacts with the United States that are related to the plaintiff's cause of action.  The Court also concludes that Metz's activities with Prime Time involve some purposeful availment of the privilege of conducting activities within the United States.  Indeed, by listing himself with a Florida contact telephone number and having the position of COO of an American company, Metz's contacts with the United States indicate that he should have reasonably anticipated being haled into court in the United States.  The Defendants' physical location in Canada does not preclude a finding that they personally participated in the preparation and issuance of misleading press releases as alleged in the Complaint.

### 2.  Traditional Notions of Fair Play and Substantial Justice

The SEC must further show that bringing this action against Robinson and Metz in the Southern District of Florida comports with traditional notions of fair play and substantial justice.  To make this determination, the Court examines each of the following: 1) the burden on the defendant in defending the lawsuit; 2) the forum's interest in adjudicating the dispute; and 3) the plaintiff's interest in obtaining relief.  Carrillo, 115 F.3d at 1547; Vermeulen, 985 F.2d at 1551 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)).

Defendants argue that as residents of western Canada, their burden in litigating this action in the southeastern corner of the United States is large.  Defendants' argument is unpersuasive.  Modern methods of transportation and communication have lessened the burden of traveling cross-country or even across the continent.  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 632 (11th Cir. 1996).  The United States has a clear interest in adjudicating this dispute within the United States, and the SEC has an interest in litigating this action in the same court as the action against Prime Time and its Florida officers or owners.  The Court therefore concludes that hearing this action in the Southern District of Florida is not one of those "rare" cases that offend traditional notions of fair play and substantial justice.  Carrillo, 115 F.3d at 1547 (citing Asahi, 480 U.S. at 113).

### 3. Corporate Shield Doctrine

Defendants argue that because they performed all of their actions for Prime Time in their capacity as officers of the corporation, those acts cannot be used to establish personal jurisdiction over them as individuals.  Doe v. Thompson, 620 So. 2d 1004 (Fla.

8

1993).  Doe involved a gross negligence action seeking to hold the president of a Texas corporation liable for an assault on an employee in Florida.  The individual defendant, however, did nothing in Florida.  Thus, the Florida Supreme Court affirmed the lack of personal jurisdiction under Florida's long arm statute.  Doe, 620 So. 2d at 1006.

As noted above, this federal court does not look to a state long-arm statute where the federal statute provides nationwide service of process.  The applicability of state corporate shield protections, therefore, is in question.  The Carrillo decision included a finding of personal jurisdiction of foreign individuals who were corporate officers alleged to control the company accused of violating the Securities Act.  115 F.3d at 1547-48.  The United States Court of Appeals for the Eleventh Circuit did not discuss the corporate shield doctrine in that decision.

The Court's own research identified Lane v. XYZ Venture Partners, 322 Fed. App'x 675, 679 (11th Cir. 2009).  In Lane, the Court affirmed the dismissal of a Fair Labor Standards Act claim against corporate officers because there was no allegation that the officers were physically present in Florida when they committed the alleged tort. Id.  That decision, however, involved the Florida long-arm statute, not a federal statute with nationwide service of process.  In an antitrust action against corporate officers, the Eleventh Circuit held that if individual officers can be liable for acts performed on behalf of a corporation, then the "individual is amenable to the forum's long arm statute, at least in situations where the nonresident individual physically was present in the forum

when he participated in the tort." DeLong Equip. Co., v. Wash. Mills Abrasive Co., 840 F.2d 843, 852 (11th Cir. 1988).[3]

Defendants Robinson and Metz assert that they were not physically present in the United States, though the supported allegations are that they did participate in corporate activities that constituted the fraud. In the context of personal jurisdiction and individual officer liability, in today's electronic and modern business world, a corporate officer's personal participation and direction of corporate acts, though done from a remote location, are tantamount to physical presence where the day-to-day operations of the company are conducted. This Court concludes that where a federal statute provides for nationwide service of process, physical presence in the forum state is not required where individuals personally participated (even though from a remote location) in an American company's actions constituting securities fraud. To rule otherwise would forbid the SEC from pursuing foreign-based individuals who commit securities fraud in the United States when they act as officers of American-based companies, even though the individuals' physical presence in the United States is limited.

### B. Pleading Fraud with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). The particularity requirement of Rule 9(b) serves an important

---

[3] The Eleventh Circuit noted that the Clayton Act only provided nationwide service of process for companies, not individuals, and therefore analyzed the personal jurisdiction question as to the individual defendants under a state long-arm statute. Delong, 840 F.2d at 848.

purpose in fraud actions by "alerting defendants to the precise misconduct with which they are charged and protecting spurious charges of immoral and fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted).  The application of Rule 9(b), however, must not abrogate the concept of notice pleading under the federal rules.  Id.; Friedlander v. Nims, 755 F.2d 810, 813 n.2 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading.").

More specifically, the Eleventh Circuit stated in Ziemba that: "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  256 F.3d at 1202 (quotations and citations omitted); U.S. ex rel. Clausen v. Lab. Corp., 290 F.3d 1301, 1310 (11th Cir. 2002).

In the securities fraud context, one court interpreted the pleading standard for private actions (which the SEC need not comply with) as requiring "in detail and with particularity the statements Plaintiffs allege to be false, when the statements were made, who made the statements, why the statements are false, and what the Defendants stood to gain in making the statements."  See In re Sunbeam Securities Litigation, 89 F. Supp. 2d 1326, 1338 (S.D. Fla. 1999).  Though not required, even this standard has been met in this case.

11

The SEC has alleged specific press releases on specific dates, with reasons why the statements were false and/or misleading, and that they were done to artificially raise Prime Time's stock price. The closest question is who made the statements. The SEC alleges the statements (at least the ones listed above in this Order) were "issued through Robinson and Metz" and both Robinson and Metz are quoted in each of the four press releases listed above. The Court concludes that at the motion to dismiss stage, these factual allegations are sufficient under Rule 9(b) to infer that Robinson and Metz had personal involvement in publicizing the statements in question.

### III.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant Dallas Robinson's Motion to Dismiss [DE 10/11] is hereby **DENIED**;

2. Defendant Troy Metz's Motion to Dismiss [DE 35] is hereby **DENIED**;

3. These Defendants shall file Answers to the Complaint by March 5, 2010;

4. The Amended Pleading deadline is extended until April 1, 2010;

5. No other deadlines are changed by this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 2nd day of March, 2010.

JAMES I. COHN
United States District Judge

cc: All parties and counsel of record